# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **REUBEN CHARLES JONES,** | ) | **CASE NO. 7:12CV00514** |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **W. T. DRAKE, *ET AL.*,** | ) | **By: Robert S. Ballou** |
| | ) | **United States Magistrate Judge** |
| **Defendants.** | ) | |

Reuben Charles Jones, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against defendants, City of Roanoke Police Sergeant W. T. Drake ("Sgt. Drake") and Police Chief Chris Perkins ("Chief Perkins"), seeking a jury trial and monetary damages for alleged violations of his constitutional rights.[1] Specifically, Jones alleges that Sgt. Drake arrested him without probable cause for misdemeanor trespass and misdemeanor aggressive solicitation. Jones bases his claim against both defendants on the fact that both criminal charges were dismissed for a lack of evidence. Jones claims that Chief Perkins is liable for his failure to adequately train Sgt. Drake. The parties' dispositive motions are now ripe.[2] Upon review of the record, I find that the defendants are entitled to qualified immunity, and thus, I grant their motions for summary judgment on this ground and dismiss the action with prejudice.

---

[1] The case was transferred to me in April of 2013, after the parties consented to the jurisdiction of a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

[2] Jones has filed three motions to strike (ECF Nos. 73, 74, & 77) two declarations defendants submitted in support of their motion for summary judgment in June of 2013. I will deny these motions because not only are the motions untimely filed under Rule 12(f)(2) of the Federal Rules of Civil Procedure, but also because Jones does not provide any basis in law or fact sufficient to strike the declarations.

**Procedural Background**

The parties have filed multiple pleadings, exhibits, rebuttals, and supplements in this action, all of which I have reviewed. Jones alleged in his original complaint two claims under § 1983. First, Jones asserts violation of his Fourth Amendment right to be free from unreasonable seizures when he claims that Sgt. Drake arrested him without probable cause on June 9, 2012 for trespass. Second, Jones contends that Chief Perkins is also liable for violating his constitutional rights relating to the trespass arrest for failing to adequately train Sgt. Drake.[3] The defendants answered (ECF No.37) and filed a motion for summary judgment (ECF No. 41). Jones responded (ECF No. 46), and also filed a motion for leave to file an amended complaint, which I granted. Liberally construed, the amended complaint (ECF No. 50) supplements Jones' complaint with two additional § 1983 claims. Jones contends that Sgt. Drake violated his Fourth Amendment rights by arresting him without probable cause for aggressive solicitation and that Chief Perkins is likewise liable for this constitutional violation by failing to adequately train Sgt. Drake.[4] The parties have exhaustively briefed the legal issues and supplemented the record with sworn statements and affidavits. All issues are now ripe and before the court for decision.

---

[3] Jones has submitted an audio recording of the June 29, 2012 trial in the City of Roanoke General District Court and asks the court to consider the recording in support of Jones' complaint. The court docketed this CD as an exhibit and retains a copy of it as part of the public record (ECF No. 32). As plaintiff requested, I have reviewed the CD as part of the evidence related to Jones' claims.

[4] Jones mentions other constitutional provisions and legal theories in his pleadings: equal protection of the laws, deprivation of liberty without due process, deprivation of privileges and immunities, impairment of reputation, and unspecified rights under the Ninth and Tenth Amendments. Jones offers no facts or argument in support of claims under any of these provisions, however. Therefore, I will address his complaint as asserting only § 1983 claims based on alleged violations of his Fourth Amendment right to be free from unreasonable seizure.

**Undisputed Facts**

The undisputed evidence of record shows that around noon on June 9, 2012, Sgt. Drake saw Jones standing in a grassy area immediately next to the exit ramp from Interstate 581 ("I-81") onto Elm Avenue[5], holding a sign that read: "If Jesus was right here, would you help him? God bless you." There are two signs on the ramp, which face away from the traffic exiting from I-581, but which are visible from the intersection at Elm Avenue. The first sign reads "DO NOT ENTER" and, the second sign prohibits hitchhiking.[6] A third sign on the ramp faces traffic using the interstate and reads: "**PROHIBITED** PEDESTRIANS, BICYCLES, MOPEDS, ANIMALS, SELF-PROPELLED MACHINERY OR EQUIPMENT." Finally, a sign reading: "STATE PROPERTY NO TRESSPASSING" is mounted on the bottom of the Elm Avenue overpass immediately above the grassy area between the interstate and the exit ramp. Sgt. Drake, who had been a police officer for nine years, was aware that individuals often solicited money from passing vehicles in the area where Jones was standing. This practice violated the Roanoke City ordinance banning solicitation in certain locations. Sgt. Drake was also aware that there was a "no trespassing" sign in that area.

Sgt. Drake stopped when he saw Jones and spoke briefly with him. Sgt. Drake arrested Jones, placed him in handcuffs, and took him before the magistrate on charges of trespass and solicitation. The magistrate, based on information Sgt. Drake provided, issued two arrest warrants for Jones, charging him with trespass, in violation of Virginia Code § 18.2-119, and

---

[5] The parties' descriptions of Jones' location differ. Jones states that he was "standing 15 to 25 feet off the road in a grassy area on the corner of Elm Avenue and 581 exit ramp . . . . with [his] back to Elm Avenue." (ECF No. 46-2, at ¶¶ 1-2 .) Drake states that Jones was "standing on the exit ramp of [I-581] North bound onto Elm Avenue . . . . approximately 30 feet past the 'Do Not Enter' sign at the top of the exit ramp." (ECF No. 42-5, at ¶ 3.)

[6] Defendants have provided unchallenged photographs of the signs near the area where Jones was standing on June 9, 2012. (ECF No. 56, Exh. F, G, H, & I.)

"engaging in prohibited conduct in soliciting a contribution or donation of money or anything of value," in violation of Roanoke City Code § 21-44.1. (ECF No. 46-3, pp. 1-2.) The trespass statute, Va. Code § 18.2-119, prohibits a person from going onto or remaining on land "after having been forbidden to do so by a sign" posted by an authorized person in a spot where it may reasonably be seen. Roanoke City Code § 21-44.1, entitled "Aggressive Solicitation and Sales," prohibits, among other things, "request[ing] an immediate donation of money or other thing of value from another person . . . . by the spoken, written, or printed word, or by other means of communication . . . . [w]hile standing on or going into any street or highway, including medians, on ramps and exit ramps." § 21-44.1(a)(1) & (b)(6).[7]

Based on the warrants, Sgt. Drake transported Jones to the Roanoke City Jail, where he was detained, pending trial. On June 29, 2012, Jones appeared for trial with his public defender in the General District Court for the City of Roanoke. Sgt Drake testified that on June 9, 2012, he saw Jones standing near the "DO NOT ENTER" sign on the Elm Street exit ramp, holding up his cardboard message about Jesus. Sgt. Drake said he asked Jones what he was doing, and Jones replied that he was trying to make some money.[8]

On cross-examination, Sgt. Drake stated that Jones was standing on the shoulder of the exit ramp, not blocking traffic in any way and that the "DO NOT ENTER" sign was directed toward vehicles traveling on Elm Avenue and not to pedestrians. Sgt. Drake admitted that there was no "no trespassing" sign in the area where Jones was and that he had not observed Jones walking up to anyone for money. The Commonwealth did not put on any other evidence.

---

[7] Code § 21-44.1(b)(6) does not require a showing that the defendant's behavior in soliciting travelers was aggressive, but rather, prohibits soliciting in any manner at the specified locations.

[8] Jones denies making this statement to Sgt. Drake.

4

Defense counsel moved to strike on grounds that the Commonwealth had not shown the elements of prohibited solicitation or trespass.

The judge granted the motion to strike as to both charges, noting that the Commonwealth had presented no evidence of signs prohibiting pedestrians from standing where Sgt. Drake found Jones. The judge remarked that Jones' conduct on June 9, 2012, presented a violation of another statute, Virginia Code § 46.2-808. This section recognizes that a person can be charged with a traffic violation for walking on any part of a controlled access highway where pedestrians are prohibited by a conspicuous sign.

The evidence submitted in support of the summary judgment motion also shows that in 2005 Sgt. Drake charged Jones under Va. Code § 46.2.118 for trespassing on the same exit ramp to Elm Avenue, for conduct similar to his actions at issue in this case. See Commonwealth v. Jones, Case No. GC05002091-00. On March 17, 2005, Sgt. Drake observed Jones standing partway down the exit ramp, in the same area where he was on June 9, 2012, holding a sign that read: "If Jesus was right here would you help him? God bless you." Sgt. Drake obtained a warrant for Jones' arrest on a charge of trespass on a state highway, in violation of Virginia Code § 18.2-119, and on April 27, 2005, Jones was convicted in the General District Court of that trespass charge.

Defendants' evidence indicates that The City of Roanoke Police Department is nationally accredited and its policies and procedures conform to state laws and rules and regulations established by the Virginia Department of Criminal Justice Services and the Virginia State Police. The police department operates a police academy to train persons as police officers on probable cause, arrest procedures, citizens' constitutional rights, and misdemeanor statutes and codes. The department also conducts regular in-service training and legal updates on such issues

for officers already on the job. Sgt. Drake graduated from the police academy and has attended in-service training regarding these subjects.

**Discussion**

**A. Motion to Dismiss**

Defendants moved to dismiss any constitutional claim based on an allegation that Sgt. Drake did not give Jones any warning of his <u>Miranda</u> rights. Jones states, however, that he has made no such allegation; rather, he alleged that Sgt. Drake <u>did</u> read him the <u>Miranda</u> warnings and he made no statements to the officer. Defendants' motion to dismiss is moot, and thus, I will dismiss it.

**B. Motions for Summary Judgment**

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). Although the court must view the evidence in the light most favorable to the nonmovant, the court "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." <u>Kloth v. Microsoft Corp.</u>, 444 F.3d 312, 319 (4th Cir. 2006).

Jones brings all his claims under 42 U.S.C. § 1983, which provides that a person acting under color of state law may be liable if he "subjects, or causes to be subjected" an individual "to the deprivation of any rights, privileges, or immunities secured by the Constitution." Jones alleges that Sgt. Drake violated his Fourth Amendment right to be free from unreasonable

seizure by arresting him without a warrant and without probable cause, and that Chief Perkins is liable for this constitutional violation because he failed to train Sgt. Drake.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Probable cause exists if the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to conclude] that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). While probable cause demands "more than mere suspicion, . . . evidence sufficient to convict is not required." Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996) (citing Wong Sun v. United States, 371 U.S. 471, 479 (1963)). Thus, the fact that "a defendant is ultimately acquitted is entirely consistent with the possibility that the police had probable cause to arrest him and did not violate any of his constitutional rights." Newton v. Rumery, 480 U.S. 386, 410-411 (1987).

Defendants argue that they are entitled to summary judgment on the ground of qualified immunity against Jones' claims for damages. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To succeed on his asserted defense of qualified immunity, the defendant must show that: (1) the facts, taken in the light most favorable to the plaintiff, do not make out a violation of a constitutional right; or (2) the

right at issue was not clearly established at the time of the alleged misconduct. Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (citing Saucier v. Katz, 533 U.S. 194, 205 (2001)).

The qualified immunity test for a warrantless arrest by a police officer is "whether a police officer acting under the circumstances at issue reasonably could have believed that he had probable cause to arrest, i.e., to believe that the arrestee was committing or had committed a criminal offense." Sevigny v. Dicksey, 846 F.2d 953, 956 (4th Cir.1988) (citation omitted). Even where an arresting officer does not have probable cause for a warrantless arrest of the suspect on the violation the officer asserts, that arrest is not unreasonable if the facts known to the officer do present probable cause for arrest on another, related offense. See Sevigny v. Dicksey, 846 F.2d 953, 956 n. 4 (4th Cir. 1988) (finding as a "general rule," "the offense actually charged by the arresting officer does not limit the basis upon which the validity of his arrest may be upheld") (citation omitted).

Based on the facts known to Sgt. Drake when he arrested Jones on June 9, 2012, the court concludes that a reasonable officer could have believed that Jones had committed or was about to commit one or more criminal offenses. Thus, I find that Sgt. Drake is entitled to qualified immunity.

First, a prudent officer could reasonably have believed Jones had violated or was about to violate Roanoke's ordinance prohibiting solicitation. Asking for money or other "thing of value," using words "or by other means of communication" while standing on "any street or highway, including medians, on ramps and exit ramps" violates Code § 21-44.1(b)(6). The grassy area where Jones claims he was standing falls within this category of locations where the statute prohibits solicitation. The question on Jones' sign —"If Jesus was here, would you help him?"— poses an implicit request that motorists stop and provide Jones money or other

assistance.  Jones' location and his sign, coupled with Sgt. Drake's knowledge that the area around the exit ramp was a popular spot for solicitation of money from motorists, would support a reasonable officer's belief that Jones was communicating his plea for money in a prohibited and dangerous location, in violation of § 21-44.1(b)(6).

Second, a prudent officer could also reasonably have believed from facts known to Sgt. Drake that Jones was violating Virginia's trespass statute, § 18.2-119.  Sgt. Drake knew that areas around the overpass were posted with "no trespassing" signs and that Jones had been convicted of trespass in 2005 under § 18.2-119 for standing in the same location with the same cardboard message.  Thus, a prudent officer could reasonably have believed he had probable cause to arrest Jones on June 9, 2012 for trespassing.

Third, the officer could reasonably have believed, as did the general district court judge, that Jones was violating Virginia Code § 46.2-808 on June 9, 2012 by standing on the ramped area connecting the interstate highway to the city street.  This section prohibits pedestrian use of "controlled access highways or *any part thereof*."  § 46.2-808(A)(1) (emphasis added).  A conspicuous sign on the ramp prohibited pedestrians in the area where Jones was standing. Additionally, Sgt. Drake knew that this area was popular for solicitation, that Jones was aware from his 2005 conviction that he was standing in a prohibited location, and a  prudent officer reasonably could have believed he had probable cause to arrest Jones for walking on posted areas near the busy I-581 thoroughfare, in violation of Virginia Code § 46.2-808.

Jones' arguments in response to Sgt. Drake's motions are unavailing.  The facts Jones disputes — exactly where he was standing in the exit ramp area, how far each of the signs' prohibitions extended, and what he said or did not say to Sgt. Drake — are not material to the court's finding that Sgt. Drake is entitled to qualified immunity.  Even assuming without finding

9

that Sgt. Drake provided some of the disputed information to the magistrate, an officer's false or misleading statement in the process of obtaining the arrest warrant does not constitute a Fourth Amendment violation unless that statement is "necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 156 (1978). For the stated reasons, I find that Sgt. Drake could reasonably have believed that probable cause existed to arrest Jones and, accordingly, that Sgt. Drake is entitled to qualified immunity against Jones' § 1983 claims for damages.

The court also concludes that Chief Perkins is entitled to qualified immunity against Jones' § 1983 claims. "As a general matter, a law officer may incur § 1983 liability only through affirmative misconduct." Randall v. Prince George's County, MD., 302 F.3d 188, 202 (4th Cir. 2002) (citations omitted). Thus, while a supervisor cannot be held automatically liable for a subordinate's misconduct,

> supervisory liability may attach under § 1983 if a plaintiff can establish three elements. These are: (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

Randall, 302 F.3d at 206 (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)). Under (1) and (2) of this standard, evidence of "a single incident or isolated incidents" of unconstitutional conduct by the supervisory official's employees is generally not sufficient to prove the supervisor had any "basis upon which to anticipate [or guard against] the misconduct" that harmed the plaintiff. Id.

Jones simply states no facts from which Chief Perkins could have anticipated that Sgt. Drake's training was so deficient as to create an unreasonable risk of his violating suspects' constitutional rights on arrest. Jones does not dispute defendants' evidence that Roanoke police

10

officers receive extensive training in constitutional rights and procedures—at the police academy before they take office and in in-service training once they are on the job.  Jones also does not allege that Chief Perkins knew of any particular instance, prior to June 9, 2012, when Sgt. Drake, or any other Roanoke police officer, arrested a suspect without probable cause.  As Jones' allegations thus fail to support the required elements of supervisory liability under § 1983, I find that Chief Perkins is entitled to qualified immunity against Jones' claims for damages.  <u>Henry</u>, 501 F.3d at 377.

**<u>Conclusion</u>**

For the reasons stated, I find that defendants are entitled to qualified immunity.  Therefore, I will grant their motions on this ground, and dismiss Jones' claims under § 1983 with prejudice.  The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for defendants.

    Enter:  January 13, 2014

    */s/ Robert S. Ballou*

    Robert S. Ballou
    United States Magistrate Judge